THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PHILLIP MANZELLA, | ) | |
| | ) | |
| *Plaintiff*, | ) | No. 23 C 4825 |
| v. | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| UNITED STATES OF AMERICA; and | ) | |
| LOUIS CHILDS, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

In September 2021, Plaintiff Phillip Manzella was involved in a motor vehicle accident with a United States Postal Service ("USPS") vehicle driven by Louis Childs. Manzella sued the United States (the "Government") and Childs, asserting negligence claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1). The Government moves for summary judgment, claiming that it is not liable to Manzella because Childs was not acting within the scope of his employment at the time of the accident. As explained below, the Court construes the Government's Motion as a Motion for Partial Summary Judgment on Count I. For the following reasons, the Court denies the Government's Motion [46].

**BACKGROUND**

The following facts are undisputed unless otherwise indicated.[1] Louis Childs has been employed by USPS as a tractor trailer operator since 2004. (Dkt. 47 ¶ 1). His job duties include

---

[1] The parties object to many of each other's Local Rule 56.1 statements Many of these objections lack merit. To the extent a statement is inadequately supported, it is not credited in this Opinion. The few objections relevant to material facts on which the Court relies are resolved in footnotes.

1

picking up, transporting, and delivering mail in USPS tractor trailers to various USPS facilities. (*Id.* ¶ 3); (Dkt. 56 ¶ at 1). He has a Commercial Driver's License ("CDL") to operate a tractor with a bobtail and trailer, which he received prior to joining USPS. (Dkt. 47 ¶ 4). Childs works out of the Cardis Collins Post Office located at 433-540 West Harrison Street in Chicago, Illinois. (*Id.* ¶ 2). USPS tractor trailers are kept at a facility adjacent to the Cardis Collins Post Office. (*Id.* ¶ 6).

Childs' regular shift starts at 11:30 a.m. and ends at 8:00 p.m. (Dkt. 47 ¶ 8)[2]; (Dkt. 56 ¶ 3). Overtime shifts consist of two additional work hours. (Dkt. 56 ¶ 3). Childs testified that he worked an overtime shift each day that he worked. (Dkt. 47-2 at 20:2-24). The standard practice for a driver to obtain an overtime assignment, which Childs follows, is to call the central dispatch office during a regular shift to make them aware of the driver's desire and availability for overtime. (Dkt. 47 ¶ 22). Dispatch then informs the driver if an overtime assignment is available. (Dkt. 47 ¶ 23); (Dkt. 47-2 at 112:5-8, 112:18-19, 113:22-114:2). Childs testified that he always received overtime when he asked for it. (Dkt. 47-2 at 112:9-113:2). Sometimes Childs received his overtime route assignment on the call with dispatch, other times he was asked to wait on standby to receive his specific assignment. (Dkt. 47 ¶ 23); (Dkt. 56 ¶ 9); (Dkt. 47-2 47-2 at 114:18-115:5). Drivers are paid for time spent on standby waiting for an overtime route assignment. (Dkt. 56 ¶ 9).

On September 22, 2021, Childs finished his regular Tour 2 shift when he reached the Roseland Post Office on the south side of Chicago, which was the last stop on his regular route. (DKt. 47 ¶ 24)[3]; (Dkt. 47-2 at 120:1-121:20, 122:11-24). When he finished his regular shift, he

---

[2] The Government asserts that, as a Tour 2 employee, Childs's shift began at 11:15 a.m. and ended at 7:45 p.m. (Dkt. 47 ¶ 7). This assertion is based on a record attached to an email from Alicia Jones. (Dkt. 47-4 at 2). Childs objects to this record as inadmissible hearsay that is unauthenticated. (Dkt. 55 ¶ 7). The Court sustains this objection. While the document falls under the business records exception to the hearsay rule, Fed. R. Evid. 803(6), it has not been properly authenticated. *Starchvill v. Dart*, 2018 WL 3456525, at *5 (N.D. Ill. July 18, 2018) (authentication is required for a document to be considered on summary judgment).

[3] Manzella disputes this fact offered by the Government in their Statement of Additional Facts, on the grounds that Childs' deposition testimony on this topic was "confusing." (Dkt. 58 ¶ 1). Manzella asks for "strict proof thereof." (*Id.*). Manzella asserts this objection to other facts proffered by Defendant. (*Id.* ¶¶ 4-5). Under Local Rule 56.1(e)(3),

called the central dispatch center and confirmed his availability for overtime. (Dkt. 47 ¶ 25)[4]. Childs then drove the USPS tractor trailer from the Roseland Post Office to the Cardis Collins Post Office where he dropped off his mail load and detached the trailer from the bobtail. (*Id.* ¶¶ 26-27). Childs was permitted to keep the bobtail tractor in the standby period between the end of his regular shift and when he received his specific overtime route assignment. (Dkt. 47 ¶ 28); (Dkt. 56 ¶ 4); (Dkt. 47-2 at 129:3-130:1).

After detaching the trailer, Childs drove the bobcat tractor to Chipotle, which was located approximately three-to-four blocks south from the USPS facility. (Dkt. 47 ¶¶ 31, 35); (Dkt. 56 ¶ 4). Childs does not remember if he had received his overtime route assignment before he drove to Chipotle. (Dkt. 47-2 at 125:12-19). He went to Chipotle to get food because he was hungry, and he did not pick up food for any other USPS employee. (Dkt. 47 ¶ 33); (Dkt. 56 ¶ 10). Childs intended to return to the Cardis Collins Post Office afterwards. (Dkt. 59 ¶ 15); (Dkt. 56 ¶10). Childs parked the bobtail tractor against the curb outside of Chipotle facing southbound. (Dkt. 47 ¶ 36). Once he reentered the bobtail, he checked his surroundings and made a U-turn to return to the Cardis Collins Post Office. (*Id.* ¶¶ 37, 38). While making the U-turn, the USPS bobtail tractor collided with a vehicle driven by Manzella. (Dkt. 47 ¶ 39); (Dkt. 47-8 at 2)[5]. The accident occurred

---

to dispute an asserted fact, the opposing party "must cite specific evidentiary material that controverts the fact" and explain "how the cited material controverts" the fact. Manzella has failed to follow this rule in the aforementioned objections to several of the Government's additional facts. The Court will therefore accept the Government's Statement of Facts, to the extent the facts are supported by the record.

[4] The Government asserts that Childs called to confirm his availability for overtime at approximately 7:00 p.m. (Dkt. 47 ¶ 25). This assertion is based on a record attached to an email from Alicia Jones. (Dkt. 47-4 at 1). Childs objects to this record as inadmissible hearsay that is unauthenticated, not under oath, lacking foundation, and speculative. (Dkt. 55 ¶ 25). The Court sustains this objection. Jones's email is hearsay and does not fall under any exceptions.

[5] Childs objects to the police report as hearsay. The objection is over-ruled. This is a civil matter, so statements of facts and observations in the report are admissible. Fed. R. Evid. 803(8); *see also Horton v. City of Chicago*, 2018 WL 4699790, at *6 (N.D. Ill. Sept. 30, 2018) (internal citations omitted). The reported statements made by Manzella are also admissible as non-hearsay statements by the opposing party. Fed. R. Evid. 801(d)(2).

around 7:54 p.m. (Dkt. 56 ¶ 2); (Dkt. 47-8 at 2). Childs was on-duty as a USPS employee at this time. (Dkt. 56 ¶ 2).

Childs called the police, his co-worker, and his supervisor, Alicia Jones, to report the accident. (Dkt. 47 ¶ 40). Upon arrival to the scene, the police completed a report and issued Childs a traffic citation. (Dkt. 47 ¶ 41); (Dkt. 47-8); (Dkt. 47-2 at 75:11-23). As required in her role as Childs's supervisor, Jones also came to the scene, collected information, took photographs, and completed a USPS investigation form afterwards. (Dkt. 47 ¶ 42); (Dkt. 47-3 at 27:9-13, 29:8-9, 30:16-20, 40:19-41:1). Childs has not worked many overtime shifts since the accident. (Dkt. 47 ¶ 45); (Dkt. 47-2 at 54:15-19).

USPS drivers are provided with a written schedule of their route for each regular eight-hour shift. (Dkt. 47 ¶10). For overtime shifts, sometimes drivers receive written route schedules and other times their routes are verbally communicated to them. (Dkt. 56 ¶ 7). Childs does not remember if he received a verbal or written overtime schedule on the night of the accident. (*Id.* ¶ 8). Drivers are permitted to take one 30-minute meal break within a six-hour period while working a regular eight-hour shift. (Dkt. 47 ¶ 13); (Dkt. 59 ¶ 3); (Dkt. 47-2 at 36:19-37:4). The drivers' schedules specify the times of their scheduled meal breaks. (Dkt. 47 ¶ 13). Childs's meal break was typically scheduled for 3:45 p.m. (*Id.* ¶ 16). Drivers are also permitted to take "comfort breaks" throughout their regular and overtime shifts to rest or use the restroom. (Dkt. 47 ¶ 17); (DKt. 59 ¶ 4). Drivers could be subject to discipline if they operated a USPS vehicle at an unauthorized location. (Dkt. 47 ¶ 43); (Dkt. 47-3 at 79:5-11).

The parties disagree whether Childs was on an authorized break at the time of the accident. Jones testified that Childs was supposed to be at the Cardis Collins Post Office and was not authorized to take the USPS vehicle to Chipotle because he had already taken his allotted 30-

4

minute meal break. (Dkt. 47-3 at 12:12-13:14). Childs testified that he was on a break at the time of the accident, and that he was allowed to take the USPS vehicle to Chipotle on this break. (Dkt. 47-2 at 52:12-53:13). The parties also dispute certain facts regarding the time, quantity, nature, and location of breaks in general. Childs testified that drivers are allowed to take a meal break during an overtime shift. (Dkt. 47-2 at 42:23-43:4). Jones testified that drivers are not allowed an additional meal break if they work an overtime shift. (Dkt. 47-3 at 14:19-21). Jones also stated that drivers are required to take their meal breaks at designated times and locations set forth on their schedules. (*Id.* at 65:19-21, 67:1-23). She further testified that drivers are not permitted to take USPS vehicles on meal breaks–how they got a meal from the specified break location was "up to them." (*Id.* at 65:14-18). Childs testified that drivers could go wherever they wanted on meal breaks. (Dkt. 47-2 at 47:12-48:2). Childs further testified that he was allowed to use a USPS vehicle to take breaks while "in the field." (*Id.* at 52:24-53:7). He also stated that no one ever told him that he was permitted to use USPS vehicles for personal use, but he had seen supervisors take USPS vehicles out for "personal business." (*Id.* at 127:22-128:16).

With respect to standby, Childs testified that drivers can take breaks before beginning their overtime shifts and are not required to remain at a USPS facility while waiting for their overtime route assignment. (Dkt. 47-2 at 47:7-17). He also stated that he had taken breaks between his regular and overtime shifts in the past, and his supervisors were sometimes aware of this. (Dkt. 47-2 at 47:7-11, 51:3-9)l; (Dkt. 47 ¶ 34). Jones testified that, while on standby, drivers wait for further instructions from "management" and typically stay at a postal facility until they receive their assignment. (Dkt. 47-3 at 55:7-13, 79:1-4).

The USPS Postal Handbook provides that employees on standby "should remain in the work facility" and "must remain ready to assume normal work activities as needed." (Dkt. 62-1 at

43). Childs testified that he never received any written guidelines or regulations from USPS regarding his overtime, breaks, or where he could take breaks. (Dkt. 47-2 at 48:12-17). Childs also testified that no one at USPS ever told him that he could not take meal breaks while working an overtime shift or that he could not take breaks between his regular and overtime shifts. (*Id.* at 43:21-44:2, 46:4-16).

## **LEGAL STANDARD**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see e.g., Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 485 (7th Cir. 2019). A material fact is genuinely disputed when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The party bringing the motion bears the initial burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (explaining that Rule 56 "imposes an initial burden of production on the party moving for summary judgment to inform the district court why a trial is not necessary" (citation omitted)).

The Court "construe[s] all facts and reasonable inferences in the light most favorable to the non-moving party." *Apex Digital, Inc. v. Sears, Roebuck, & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). The Court also gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in his favor[.]" *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (cleaned up). At this stage, the court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Summary

judgment should be denied when "a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted[.]" *White*, 829 F.3d at 841.

## DISCUSSION

Manzella brings claims of negligence against the United States and Childs under the Federal Tort Claims Act ("FTCA"). (Dkt. 9). He alleges that he was struck by a USPS vehicle driven by Childs and suffered injuries as a result. (*Id.* at ¶¶ 4, 10). Manzella offers two theories of liability as to the United States: indirect liability for Childs's actions under *respondeat superior*, (Dkt. 9 ¶¶ 9-19) (Count I), and direct liability for failure to supervise and train Childs, (*Id.* ¶¶ 20-29) (Count II). The Government moves for summary judgment in its favor, arguing that it is not liable because Childs, a federal employee, was not acting within the scope of his employment at the time of the accident.

### I.    Partial Summary Judgment

The Government's Motion does not specify whether it is seeking summary judgment on both Counts brought against it; it only states that the Government is seeking "summary judgment in favor of the defendant." (Dkt. 46 at 1, 10). The Government raises arguments relating to whether Childs was acting in the scope of his employment but does not make any reference to Manzella's claims in Count II that the Government was negligent in supervising and training Childs. (*See generally* Dkt. 46). The Government asserts for the first time in its Reply brief that Count II of the Amended Complaint cannot survive summary judgment. (Dkt. 64 at 7). It argues that it should be granted summary judgment on this Count because Manzella did not identify any USPS employees who may have negligently supervised or trained Manzella. (*Id.* at 6). It further asserts that, even if

7

Manzella had fully developed this claim, the Government would have been protected under the discretionary function exception to the FTCA[6]. (*Id.* at 6-7).

A party cannot raise a new issue for the first time in a Reply brief. *See Abrego v. Guevara*, 2024 WL 3566679, at *13 (N.D. Ill. July 29, 2024); *Citizens Against Ruining The Env't v. E.P.A.*, 535 F.3d 670, 675 (7th Cir. 2008) ("It is improper for a party to raise new arguments in a reply because it does not give an adversary adequate opportunity to respond."). Therefore, the Court construes the Government's Motion as a Motion for Partial Summary Judgment on Count I of the Amended Complaint. *See Chatman v. City of Chicago*, 2018 WL 1519160, at *1 (N.D. Ill. Mar. 28, 2018) (construing summary judgment motion as a motion for partial summary judgment where motion omitted one or more count of complaint); *Carter v. Gen. Elec. Co.*, 2000 WL 321663, at *1 n.1 (N.D. Ill. Mar. 21, 2000) (construing summary judgment motion as a motion for partial summary judgment where defendant failed to make arguments in motion regarding three out of four counts).

## II.  Scope of Employment

The United States has sovereign immunity from suit unless it has consented to be sued. *Lipsey v. United States*, 879 F.3d 249, 253 (7th Cir. 2018). The FTCA provides a limited waiver of this immunity, allowing causes of action against the United States for tort claims "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ." *Id.* (citing 28 U.S.C. § 1346(b)(1) and *United States v. Orleans*, 425 U.S. 807, 813 (1976). An action under the FTCA is governed by "the law of the

---

[6] The discretionary function exception to the FTCA applies to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); *Reynolds v. United States*, 549 F.3d 1108, 1112 (7th Cir. 2008).

8

place where the act or omission occurred." 28 U.S.C. § 1346(b). Here, the alleged negligence occurred in Illinois, so Illinois law governs.

The sentiment among Illinois courts is that "[s]ummary judgment is generally inappropriate when scope of employment is at issue." *Doe v. Roe*, 2013 WL 2421771, at *3 (N.D. Ill. June 3, 2013) (citing *Pyne v. Witmer,* 129 Ill. 2d 351, 359 (Ill. 1989)). "Only if no reasonable person could conclude from the evidence that an employee was acting within the course of employment should a court hold as a matter of law that the employee was not so acting." *Id.* Otherwise, scope of employment is a question of fact for the jury to decide. *Sandoval v. United States*, 2017 WL 2536588, at *2 (N.D. Ill. June 9, 2017); *Lujano v. Town of Cicero*, 691 F. Supp. 2d 873, 889 (N.D. Ill. 2010).

Illinois law draws upon the Second Restatement of Agency (the "Restatement") to define the scope of employment. *Adames v. Sheahan*, 233 Ill. 2d 276, 299 (Ill. 2009). Under the Restatement, an employee's action falls within the scope of employment if "(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master." Restatement (Second) of Agency § 228 (1958). All three criteria must be met; the failure to establish any one of them is "sufficient to place the conduct outside the scope of employment." *Elston v. County of Kane*, 948 F.3d 884, 887 (7th Cir. 2020) (citing *Adames*, 233 Ill. 2d at 299). An employee's action that is completely unauthorized by their employer may, however, still be within the scope of employment. *See* Restatement (Second) of Agency § 230 (1958) ("An act, although forbidden, or done in a forbidden manner, may be within the scope of employment.").

Where an employee's conduct was allegedly unauthorized, the question becomes whether the conduct was "so similar to or incidental to" authorized conduct "as to be within the scope of

9

employment." Restatement (Second) of Agency § 229 (1958); *see also Martin*, 663 F. Supp. 3d at 850. In these circumstances, a court may only determine scope of employment as a matter of law if the employee's "deviation from the course of employment is either slight or exceedingly marked." *Doe*, 611 F. Supp. 3d at 546 (citing *Stern v. Ritz Carlton Chi.*, 299 Ill. App. 3d 674, 678 (1998)). The following factors are some examples of what courts may consider when determining whether allegedly unauthorized conduct is within the scope of employment: whether the act is commonly done by employees; the time, place, and purpose of the act; the previous relationship between the employer and employee; whether the employer has reason to expect the act will be done; and the similarity of the act done to the act authorized. *See* Restatement (Second) of Agency § 229(2) (1958); *Martin*, 663 F. Supp. 3d at 850.

The Government argues that the first two criteria of the Restatement Section 228 test are not met because Childs's conduct at the time of the accident was not authorized.[7] (Dkt. 46 at 6-7). It asserts that, because Childs was on standby awaiting his overtime assignment, he was required to remain at the Cardis Collins Postal Facility. (*Id.* at 6). Additionally, the Government contends that Childs was not on a scheduled meal break. (*Id.* at 6-7). As such, the Government argues, Childs was not permitted to take a USPS vehicle to Chipotle. (*Id.*). Childs contests all of this. (Dkt. 54 at 7-8). He asserts that he was allowed to take breaks while on overtime, that those breaks did not have to be at a postal facility, and that his supervisors knew about and did not object to previous meal breaks he took during his overtime shifts. (*Id.* at 6).

This factual issue, while clearly disputed, is not wholly determinative of the scope of the employment issue. First, even if Childs's conduct was authorized, it still must have been motivated, at least in part, to serve the purpose of the employer. *Cavalier v. Speedway, LLC*, 2024

---

[7] Manzella adopts and incorporates Childs's Memorandum in Opposition to the Government's Motion for Summary Judgment. (Dkt. 57 at 5).

WL 1363413, at *7 (N.D. Ill. Mar. 29, 2024) (all three prongs of the Restatement test must be met). Second, Childs may have been acting within the scope of his employment at the time of the accident even if his conduct was unauthorized. *See* Restatement (Second) of Agency § 230 (1958); *see also Martin v. Union Pac. R.R. Co.*, 663 F. Supp. 3d 833, 851 (N.D. Ill. 2023) ("Even if [the employee's behavior] was not authorized, or required, it could still have been within the scope of his employment") (citing *Wilson v. Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 841 F.2d 1347, 1355 (7th Cir. 1988); *Covarrubias v. Wendy's Props., LLC*, 2022 WL 1238666, at *8 (N.D. Ill. Apr. 27, 2022). Accordingly, the Court need not resolve this factual dispute at this time. *In re Jimmy John's Overtime Litig.*, 2018 WL 3231273, at *8 (N.D. Ill. June 14, 2018) ("The Court is concerned only with disputes over material facts and factual disputes that are irrelevant or unnecessary will not be counted.") (internal citations omitted).

The City argues Childs was not acting within the scope of his employment because no reasonable person could find that Childs's use of a USPS vehicle to go to Chipotle had any purpose to serve USPS. (Dkt. 46 at 8). An employer is not liable for the actions of an employee that were committed solely for the benefit of the employee. *Richards v. U.S. Steel*, 869 F.3d 557, 565 (7th Cir. 2017) (citing *Wright v. City of Danville*, 174 Ill. 2d 391, 406 (Ill. 1996)). There is some evidence that Childs was acting solely for his own benefit at the time of the accident—it is uncontested that Childs drove the USPS bobtail tractor to Chipotle because he was hungry. (Dkt. 47 ¶ 33). The broader context surrounding the incident, however, leaves open the possibility that a reasonable jury could find that Childs was motivated, at least in part, by a purpose to serve USPS when he went to Chipotle. *See e.g. Cade v. Bankston*, 2026 WL 73708, at *5 (N.D. Ill. Jan. 9, 2026).

11

It is reasonable to assume that USPS has an interest in all mail and packages being transported efficiently, timely, and safely. To do that, USPS drivers need to periodically eat and rest. This is supported by the undisputed fact that USPS allows drivers to take "comfort breaks." (Dkt. 47 ¶ 17); (DKt. 59 ¶ 4). Childs went to Chipotle while he was waiting to receive his overtime route assignment, approximately four hours after his regular shift meal break. (Dkt. 47 ¶¶ 16, 25, 31, 35); (Dkt. 56 ¶ 2). Once he received his overtime assignment, he would be working for an additional two hours. (Dkt. 56 ¶ 3). If Childs did not get a meal before his overtime shift started, he would have gone six hours without eating. Moreover, instead of taking a detour or extended break while driving his overtime route, Childs chose to get a meal while he was between shifts. Childs arguably saved USPS time by doing so. Thus, a reasonable jury could find that Childs's conduct leading up to the accident was not a "pursuit of personal objectives so far removed from the job that [it] land[s] outside the scope of employment." *Brownlee v. Cath. Charities of Archdiocese of Chicago*, 2018 WL 1519155, at *6 (N.D. Ill. Mar. 28, 2018) (citing *Pyne*, 129 Ill. 2d at 360)); *see also Covarrubias*, 2022 WL 1238666, at *9 (reasonable jury could conclude that an employee's aggressive tactics to remove customers served interest of company in closing store); *Cade*, 2026 WL 73708, at *5 (reasonable jury could infer that teacher's assault of a student was partially motivated by desire to serve interests of school district in bringing order to the classroom and maintaining discipline).

The location and timing of Childs's conduct is also relevant. In *Furry v. United States*, the court rejected similar arguments from the Government that a USPS driver was acting outside the scope of his employment because he violated postal regulations by leaving his designated route without authorization. *See, e.g.* 2011 WL 1002852, at *5 (N.D. Ill. Mar. 17, 2011). The court denied summary judgment on the basis of scope of employment after considering that the

plaintiff's detour only lasted a few minutes and only took him a few blocks from his designated route. *Id.* The same reasoning applies here. Childs only drove four blocks from the USPS facility he was allegedly supposed to wait at shortly after he was told to stand by for his overtime assignment. Given these facts, the Court cannot conclude at this stage that any deviation by Childs from his authorized location or route was so exceedingly marked that it fell outside the scope of his employment as a matter of law. *See Furry*, 2011 WL 1002852, at *5.

Furthermore, it is uncontested that employees are allowed to take one 30-minute meal break during regular shifts and short "comfort breaks" to rest or use the bathroom at locations of their choosing during regular and overtime shifts. (Dkt. 47 ¶¶ 13, 17); (Dkt. 59 ¶¶ 3-4). Additionally, Childs testified that, on several previous occasions, he had taken a USPS vehicle to get a meal between his regular and overtime shifts without issue and with his supervisor's knowledge. (Dkt. 47 ¶ 34); (Dkt. 47-2 at 47:7-11, 51:3-9). These facts suggest that Childs's conduct, even if unauthorized, was similar in quality to authorized activity, commonly done by employees, and foreseeable by USPS. Accordingly, a reasonable jury could, and should, decide whether Childs taking a USPS vehicle to Chipotle between his regular and overtime shifts was a "predictable outgrowth of acts the employer authorized the employee to perform." *Covarubbias*, 2022 WL 1238666, at *9 (citing *Maras v. Milestone, Inc.*, 348 Ill. App. 3d 1004, 1009 (2004)).

In sum, there are multiple issues of fact that prevent the Court from deciding the scope of employment issue as a matter of law. A reasonable juror could conclude, based on the record as a whole, that Childs was acting within the scope of his employment at the time of the accident. As such, summary judgment is denied as to Count I.

## CONCLUSION

For the foregoing reasons, the Government's Motion for Summary Judgment [46] is

denied.

_____

Virginia M. Kendall
United States District Judge

Date: March 10, 2026

14